IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

Case No. 19-30750

———————————————

Charles F. Ficher, Jr.,
        Petitioner - Appellant

v.

Jason Kent, Warden, Dixon Correctional Institute,
        Respondent - Appellee

————————————

Appeal from the United States District Court for the
Eastern District of Louisiana, New Orleans

———————————————

BRIEF OF APPELLANT, CHARLES F. FICHER, JR.

————————————————————————

Respectfully submitted by:

Nisha Sandhu
Nisha Sandhu, APLC
434 East Lockwood Street
Covington, Louisiana 70433
Tel.: (504) 920-7310
Fax: (504) 814-4513
*Attorney for Charles F. Ficher, Jr.*

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that

the judges of this court may evaluate possible disqualification or recusal.

1. Charles F. Ficher, Jr., Appellant

2. The Honorable Michael B. North, Judge Presiding, United States District

   Court for the Eastern District of Louisiana

3. Nisha Sandhu, Attorney for Appellant, Charles F. Ficher, Jr.

4. G. Ben Cohen, Orleans Parish District Attorney's Office

/s/  Nisha Sandhu
Nisha Sandhu
*Attorney of Record for*
*Charles F. Ficher, Jr.*

## <u>STATEMENT CONCERNING ORAL ARGUMENT</u>

Appellant Charles F. Ficher, Jr., respectfully requests that this Court hear oral argument in this appeal. This case involves novel legal issues concerning equitable tolling and actual innocence, and oral argument would materially assist the Court in disposition of the issues.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.....................ii

Table of Contents ................................................................................................. v

Table of Authorities ............................................................................................ vi

Statement Concerning Oral Argument .................................................................iv

Statement of Jurisdiction .....................................................................................1

Issues Presented for Review.................................................................................1

Statement of the Case ..........................................................................................1

Summary of the Argument....................................................................................7

Argument..............................................................................................................7

Conclusion..........................................................................................................22

Certificate of Service.........................................................................................23

Certificate of Compliance ..................................................................................24

# TABLE OF AUTHORITIES

## Cases

*Berryman v. Morton,* 100 F.3d 1089 (3rd Cir. 11/14/96) .......................................21

*Brown v. Allen,* 344 U.S. 443, 506, 73 S.Ct. 397 (1953) .......................................21

*Busby v. Dretke,* 359 F.3d 708 (5th Cir. 2004) .........................................................8

*Calderon v. Thompson,* 523 U.S. 538, 118 S. Ct. 1489 (1998) ..............................17

*Coleman v. Thompson,* 501 U.S. 722, 111 S. Ct. 2546 (1991) ...............................17

*Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105 (1974) ............................................22

*Holland v. Florida,* 560 U.S. 631, 130 S. Ct. 2562 (2010) ......................................9

*House v. Bell,* 547 U.S. 518, 126 S. Ct. 2064 (2006) .......................................11, 15

*Jones v. Jones,* 988 F. Supp. 1000 (E.D.La. 12/19/97)...........................................20

*Lewis v. Thaler,* 701 F.3d 783 (5th Cir. 2012) .........................................................8

*Martinez v. Ryan,* 566 U.S. 1, 132 S. Ct. 1309 (2012) ...........................................13

*McQuiggin v. Perkins,* 569 U.S. 383, 133 S.Ct. 1924 (2013) ........................passim

*Moore v. Johnson,* 194 F.3d 586, (5th Cir. 1999) ..................................................20

*Pace v. DiGuglielmo,* 544 U.S. 408, 125 S. Ct. 1807 (2005) ..................................9

*Schlup v. Delo,* 513 U.S. 298, 115 S. Ct. 851 (1995) ..................................10, 15, 16

*Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984) ..........................19

*Thompson v. Keohane,* 516 U.S. 99, 116 S. Ct. 457 (1995) ...................................21

*Townsend v. Sain,* 372 U.S. 293, 83 S. Ct. 745 (1963) ..........................................21

*Trevino v. Thaler,* 569 U.S. 413, 133 S.Ct. 1911 (2013) .......................................13

*United States v. Kimler,* 167 F.3d 889, (5th Cir. 1999) .........................................19

## Statutes and Codes

28 U.S.C.S. § 2244(d) ...............................................................................9

## STATEMENT OF JURISDICTION

Jurisdiction of this Court is invoked under Section 1291, Title 28, United States Code, as an appeal from a final judgment of habeas pursuant to §2254 in the United States District Court for the Eastern District of Louisiana. Notice of appeal was timely filed in accordance with Rule 4(b) of the Federal Rules of Appellate Procedure.

## STATEMENT OF THE ISSUES

1. Whether Mr. Ficher's habeas petition was untimely and procedurally defaulted or whether it was properly before the district court as a result of equitable tolling and/or actual innocence.

2. If the petition is found to have been properly and timely filed before the district court, then the substantive constitutional issues for determination are: (a) whether Mr. Ficher suffered ineffective assistance of counsel with respect to the failure to call Kimmie Alexander as a witness, and (b) whether Mr. Ficher suffered ineffective assistance of counsel with respect to the defense attorney's handling of Robert Young's testimony.

## STATEMENT OF THE CASE

### A.    Trial court proceedings

In November 1992, Mr. Ficher was indicted by grand jury in Orleans Parish on one count of second-degree murder.  On October 26, 1993, Mr. Ficher appeared

for trial by jury and was found guilty as charged.  On November 9, 1993, the trial court denied Mr. Ficher's motion for new trial, and sentenced appellant to life imprisonment without benefit of probation, parole or suspension of sentence.  Mr. Ficher appealed his conviction through appointed counsel, who filed an *Anders* brief and moved to withdraw. ROA.82, 168.    Mr. Ficher filed a *pro se* supplemental brief.  On January 19, 1995, Mr. Ficher's conviction and sentence were affirmed on appeal.  Id.  Mr. Ficher filed for writ of certiorari at the Louisiana Supreme Court, which was denied on June 16, 1995.  He did not seek certiorari from the United States Supreme Court.

On October 22, 1996, Mr. Ficher filed his first application for post-conviction relief ("PCR") at the state trial court.  On May 28, 2003, Mr. Ficher filed a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal, seeking to have the trial court act on the apparently-pending PCR.  ROA.83, 137. On June 23, 2003, the Louisiana Fourth Circuit Court of Appeal issued a decision "in the interest of judicial economy" purportedly on the merits of the post-conviction application, denying the application. ROA.68.  Although the trial court denied Mr. Ficher's PCR on March 9, 1998, he was not informed of the ruling.  In his December 22, 2017, Objection to the Magistrate Judge's Report and Recommendation, Mr. Ficher stated that the first he learned of the March 9, 1998, ruling was the Report and Recommendation.  ROA.136-37.  Because he did not

receive a ruling, Mr. Ficher filed for mandamus at the Fourth Circuit court requesting the trial court to rule. The appellate court issued a decision denying relief. ROA.168. Mr. Ficher sought writs at the Louisiana Supreme Court, which were denied on August 20, 2004. ROA.168. Mr. Ficher again filed a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal in September 2004, which was denied as repetitive. ROA.169. Mr. Ficher sought writs at the Louisiana Supreme Court, which were denied as moot on August 19, 2005. ROA.169.

On October 6, 2005, Mr. Ficher filed his first habeas petition at the Eastern District of Louisiana. ROA.169. In his petition, he argued four (4) claims, namely, 1) denial of a fair trial due to prosecutorial misconduct, 2) insufficient evidence to support his conviction; 3) ineffective assistance of trial counsel for failure to present witnesses on his behalf and to request a limiting instruction regarding the use of prior inconsistent statements; and 4) the procedure for grand-jury selection in his case was unconstitutional. ROA.169. Mr. Ficher's filing was a mixed petition. Consequently, the district court dismissed his petition without prejudice for failure to exhaust state court remedies, as claims 1 and 4 were unexhausted. ROA.169. Mr. Ficher moved for a certificate of appealability with this Honorable Court, which was denied on October 6, 2009. ROA.169.

On March 18, 2013, Mr. Ficher filed a second PCR in state court, based on *Martinez v. Ryan*, equitable tolling and actual innocence, claiming that his initial post-conviction relief application could be reopened for consideration.  ROA.14, 170.  On May 14, 2013, the state trial court denied Mr. Ficher's PCR.  Mr. Ficher sought supervisory review at the Louisiana Fourth Circuit, which was denied on October 3, 2013, as time barred, pursuant to La.C.Cr.P. art. 930.8.  On October 22, 2013, Mr. Ficher sought discretionary review at the Louisiana Supreme Court.  On June 20, 2014, the Louisiana Supreme Court denied Mr. Ficher's PCR as untimely.

On September 24, 2014, Mr. Ficher filed his second habeas petition, seeking review of claims previously raised but dismissed: 1) denial of a fair trial due to prosecutorial misconduct, and 2) ineffective assistance of trial counsel for failure to a) present a key defense witness, b) request a limiting instruction regarding the proper use of prior inconsistent statements, and c) challenge the grand-jury indictment.  ROA.5-31, 170.  The State responded, arguing that Mr. Ficher's habeas should be dismissed with prejudice as untimely. Mr. Ficher replied. ROA.78-80.  On September 8, 2017, the magistrate court issued its report recommending that Mr. Ficher's habeas petition be dismissed with prejudice as untimely.  ROA.81-95.  On November 2, 2017, the district court judge issued an order adopting the report and recommendation, denying Mr. Ficher's petition and entering judgment in favor of the State.  ROA.98-99, 170.  On November 27, 2017,

the court received a letter from Mr. Ficher stating that he did not receive a copy of the magistrate court's report and recommendation.  ROA.103-106.  On November 29, 2017, the court ordered that Mr. Ficher would have until December 29, 2017, to file objections to the report and recommendation.  ROA.107.  On December 29, 2017, Mr. Ficher filed his objections.  ROA. 112-129.

In 2019, Mr. Ficher's case was re-allotted at the district court, ROA.166, and on August 2, 2019, the district court dismissed Mr. Ficher's habeas petition with prejudice.  ROA.167-179.  On September 6, 2019, Mr. Ficher filed his notice of appeal.  ROA.182-201.  The district court forwarded Mr. Ficher's notice of appeal to this Honorable Court.  ROA.202.  On November 23, 2020, this Honorable Court ordered that Mr. Ficher's certificate of appealability be held in abeyance to determine whether his notice of appeal was timely filed.  ROA.217-219.  The matter was remanded to the district court and on February 2, 2021, the court appointed counsel for the limited purpose of determining whether Mr. Ficher's notice of appeal was timely filed.  ROA.220-223.  After appointing counsel, the matter came before the magistrate judge by conference concerning the notice issue. The State withdrew its challenge as to timeliness.  ROA.243-246.  On April 1, 2021, the district court adopted the magistrate court's report and recommendation. ROA.247.  This Honorable Court ordered supplemental briefing on the certificate of appealability, which was timely filed.  This Honorable Court granted COA in

part on issues concerning timeliness of Mr. Ficher's habeas filing. This filing timely follows.

## B.    Statement of the Facts

Mr. Ficher was convicted of second-degree murder for the May 13, 1992, shooting death of Kevin Smith in the Calliope Housing Project. ROA.91. Mr. Ficher has maintained his innocence of the charged offense in all proceedings of this case. ROA.29, 91.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal provided the following recitation of the underlying facts adduced at trial,

> On May 13, 1992, around noon, Arland Burrell went to pick up Kevin Smith in the Calliope Housing Project in an automobile owned by Smith's mother, Geraldine Johnson. Ms. Johnson lent the Oldsmobile Delta Eighty-Eight to Burrell earlier that day. Burrell was sitting in the driver's seat and Smith was standing outside the car near the front passenger's seat when Burrell saw the defendant approach the car and shoot Smith with a shotgun. Burrell drove off, but stopped approximately one and a half blocks from the scene of the shooting. Later Burrell identified the defendant's photograph from a photographic line-up. Another witness, Robert Young, testified at trial that he, too, saw the defendant shoot Kevin Smith with a shotgun. Young also selected the defendant's photograph from the line-up. According to Dr. Susan Garcia, an expert in the field of forensic pathology, Smith died as the result of three shotgun blasts, one each to the head, chest and lower back. The defendant was arrested in Dekalb County, Georgia, on July 24, 1992, and extradited to Louisiana on October 24, 1992.
>
> The defendant presented an alibi defense and attempted to impeach the credibility of witness Robert Young. The defendant's girlfriend, Alecia Boutte, testified that the defendant, a senior at Sara T. Reed High School, was the father of her baby and living at her house at the time of the murder. She stated that the defendant was in bed with her when she awoke that day. However, on cross-examination, Ms. Boutte admitted that she did not know

what time she woke up. The defendant's mother related that her son was living with Ms. Boutte at the time of the murder. The defendant testified that he knew Smith from the neighborhood and told Smith not to sell drugs in front of his mother's home. The defendant, who was not attending school at the time of the murder, denied killing Smith.

*State v. Fisher*, 95-0476 (La. App. 4 Cir. Jan. 19, 1995) (unpublished); see also ROA.91.

## SUMMARY OF THE ARGUMENT

This Honorable Court has granted a Certificate of Appealability on whether Mr. Ficher's petition was untimely and procedurally defaulted or whether his filing was properly before the court as a result of equitable tolling and actual innocence. Under the circumstances of this case, Mr. Ficher's petition should be subject to equitable tolling or the exception of actual innocence, as he has presented a constitutional claim and credible claim of actual innocence.

## ARGUMENT

Habeas is one of the most remote, most restrictive, and difficult forms of collateral attack on a conviction. For the accused-found-guilty, it is usually the one last effort remaining in the few and restrictive means of challenging his or her conviction. Indeed, such a fight for liberty against the formidable AEDPA can seem insurmountable—usually, because it is. During this process, Petitioner believed he was stymied. He had no counsel, could not afford counsel and was left to meander the labyrinth of collateral attack without knowing which way to turn

(or perhaps, even, that he could turn). The issue at stake in this matter is whether Mr. Ficher should be permitted to have his claims reviewed once-and-for-all.

### 1. Timeliness and procedural default

In a habeas corpus appeal, the appellate court "reviews the district court's findings of fact for clear error and its conclusions of law *de novo*." *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012) (*quoting Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004)).

The district court denied Petitioner's request for habeas relief on the basis that Petitioner's filing was untimely. ROA.173. Specifically, Mr. Ficher's conviction became final on September 14, 1992, when the 90-day period for seeking certiorari with the United States Supreme Court expired, and Mr. Ficher did not seek relief. ROA.173. Given the grace period afforded petitioners at that time, Mr. Ficher had until April 24, 1997, during which he could have filed for habeas relief. His second habeas petition, the one on which this appeal is taken, was filed on September 24, 2014, and considered untimely by the district court. ROA.173. Petitioner has maintained that his claims, though procedurally defaulted, should not have been dismissed with prejudice but that his matter warrants equitable consideration. Mr. Ficher's petition may be subject to equitable tolling or otherwise interrupted, and, therefore, overcome procedural default.

## A.    Equitable tolling

Under AEDPA, a state prisoner ordinarily has one (1) year to file a petition

for habeas relief.  That one (1) year period commences to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.S. § 2244(d)(1).  However, under certain circumstances, this one (1) year

time period may be subject to statutory tolling, equitable tolling or an exception

that overcomes procedural default.  The time limit may be subject to statutory

tolling if "a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending."  28 U.S.C.S. §

2244(d)(2).  The time limit may be subject to "equitable tolling," if the petitioner

"shows (1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way and prevented timely filing." *Holland*

*v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2562 (2010) (*quoting Pace v.*

*DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005)).  Finally, a petitioner

may overcome the time limit if he demonstrates a claim of actual innocence.

*McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 1926 (2013) ("Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808, and *House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1, or expiration of the AEDPA statute of limitations[.]").

 Neither the magistrate's report and recommendation nor the district court's ruling adopting the magistrate's recommendation, shows Mr. Ficher's first PCR application and ruling to be problematic as far as timeliness.  It is the intervening period *between* Mr. Ficher's first and second state post-conviction relief applications that have created the issue of procedural default.

In particular, Mr. Ficher filed his first post-conviction relief application ("PCR1") on October 22, 1996.  He never received a ruling on this application. Indeed, it appears somewhat unclear whether the district court even sent the ruling to anyone when it purportedly ruled in 1998.  In 2003, after seven (7) years of waiting for a ruling, Mr. Ficher filed a writ of mandamus in the Louisiana Fourth Circuit to force a ruling from the trial court on his apparently pending PCR1.  In response, the Fourth Circuit denied Mr. Ficher's PCR, stating that it had been considered "on the merits" by the appellate court in the interest of "judicial economy."  ROA.83.  He then sought writs at the Louisiana Supreme Court and was denied.  He again filed a writ of mandamus with the Louisiana Fourth Circuit

in September 2004, which was again denied.  Subsequently, Mr. Ficher filed a writ of mandamus with the Louisiana Supreme Court, which was denied as "moot" in August 2005.  On October 6, 2005, Mr. Ficher filed his habeas petition in federal court.  In November 2008, his petition was denied without prejudice as a mixed petition.  Mr. Ficher applied for COA, which was denied in October 2009.

Mr. Ficher filed PCR2 in 2013, within one (1) year of *Martinez v. Ryan* being issued.  He had apparently understood from his 2009 habeas denial, that his petition was denied without prejudice, but believed he was somehow prevented from bringing his unexhausted claims to state court.  ROA.116.  Indeed, until his 2009 habeas denial, Mr. Ficher had filed at least ten separate pleadings in state and federal trial and appellate courts.  The 2009 COA denial appears to have confused him with respect to raising his unexhausted state claims, as he explained in his Objection to the Magistrate's Report and Recommendation ("Petitioner had become judicially stagnated up until the arrival of *Martinez v. Ryan*, [d]ecided March 20, 2012.").  ROA.116.  Subsequently, after *Martinez* was issued, Mr. Ficher filed PCR2 with the unexhausted claims and believing, in part, that he could raise the claims as there was a newly issued case applicable to him.  *See* 28 U.S.C.S. §2244(d)(1)(C).  In denying PCR2, however, the state trial court reasoned that Mr. Ficher had been represented by counsel at trial and on appeal and, therefore, *Martinez* did not apply. ROA.20, 140. It does appear, however, that Mr.

Ficher raised his PCR2 claims requesting the appointment of counsel so that his first and second post-conviction applications could be heard together. ROA.21-22. It is apparent from the *pro se* filings that Mr. Ficher was struggling to understand the caselaw and how it applied to him. More importantly, however, and yet less predictable, is that he continually filed collateral challenges to argue his innocence.

Mr. Ficher filed writs of mandamus in state proceedings seeking to force a ruling from the trial court on PCR1. Through the years, he has consistently argued that no such ruling was ever made, prompting him to seek assistance in federal court by filing habeas proceedings in 2005, where he raised his initial PCR claims as well as new claims not heard by the trial court in state proceedings. Those habeas proceedings resulted in dismissal of his first habeas petition because it was mixed.

In his Objection to the district court's 2019 report and recommendation, Mr. Ficher acknowledged that he had been under duress because PCR1 was never decided. ROA.186. Based on this duress and having no choice but to pursue collateral proceedings *pro se*, he struggled in trying to navigate the procedural intricacies required at each level of filing and in each court. The tangled filings ensued. ROA.186. On these grounds, he had returned to federal court in 2014, pleading for a jurisprudential remedy that would permit his claims to be considered

in the present habeas proceedings to overcome the untimeliness issue.[1]    Mr.

Ficher's 2014 habeas claims were based on a confluence of *Martinez v. Ryan*,

actual innocence, and miscarriage of justice/equitable principles.    He sought to

demonstrate the resulting ineffective assistance and the "cause" to excuse

procedural default.    *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012); *Trevino

v. Thaler*, 569 U.S. 413, 133 S.Ct. 1911, 1917 (2013).

As demonstrated above, Mr. Ficher's filings have been continual.    However,

his filings were all *pro se*—including, for all intents and purposes, his state appeal.

As a result, and as explained above, Mr. Ficher has suffered the fate of apparent

procedural default.    Consequently, the only viable hope for Mr. Ficher's claims is

tolling or an exception to the time limitations expressly imposed by AEDPA.

In this matter, Mr. Ficher has pursued his rights diligently, and the

"extraordinary circumstance" preventing him from avoiding procedural default

---

[1] Although *Martinez* has been applied to cases of ineffective assistance of counsel, it is worth noting that the failures plaguing Mr. Ficher's two post-conviction applications, first habeas petition and intervening time period until he brought his second habeas petition, were no different from having ineffective counsel.    Indeed, if Mr. Ficher's initial post-conviction application had been filed by post-conviction counsel and had followed the same set of facts and trajectory of denials and confused rulings, *Martinez* would be directly on point to allow Mr. Ficher consideration of his unheard claims.    He would have had "cause" to excuse the resulting procedural default.    For Mr. Ficher, however, there was no guarantee of post-conviction counsel for his initial state post-conviction application.    And he could not afford to retain private counsel to file for him.    Instead, he relied on "inmate counsel" to guide his challenges based on actual innocence.    To have Mr. Ficher's petition fail for want of proper procedure due to untrained assistance may be more reasonable if not for the excusability of failures pursuant to ineffective assistance claims.    Indeed, the potential for default is exponentially higher for *pro se* parties than for represented parties.    Consequently, to recognize "cause" for one who can afford representation—but not to one who cannot afford such—defies common sense.

appears to have been his understanding that he could not exhaust his claims in state court until *Martinez*. The record establishes that Mr. Ficher actively pursued his rights until he mistakenly understood apparently in 2009, that he "could not go forward nor backwards (with his unexhausted claim!)". ROA.138-39. At this point, it should be noted that Mr. Ficher filed pursuant to *Martinez* within the time delays he believed were applicable to him, i.e., within one year from a newly recognized right by the Supreme Court. 28 U.S.C. §2244(d)(1)(C). Mr. Ficher asserts that his state claims were never considered on the merits for reasons beyond his control. Indeed, he was not notified of rulings by the trial court and filed for mandamus to have the trial court act on his post-conviction application. Mr. Ficher had timely filed his innocence claim based on the issue concerning Ms. Kimmie Alexander, however, he has not received any consideration of that ruling.[2] Mr. Ficher avers that his petition should be subject to equitable tolling rendering his claims ripe for consideration accordingly.

---

[2] Mr. Ficher is faced with an odd situation—having raised a claim that has not been given appropriate consideration. If the trial court ruled, what were its reasons? Mr. Ficher never received written reasons, and none were ordered to be delivered to him. How would the appellate court have given merits consideration, i.e., *de novo* treatment, without his petition or the Petitioner's record? It is unclear whether the appellate court considered the issues *de novo*. Given the procedural missteps by the state courts in the proceedings below, it cannot be presumed that discretionary review *de novo* even occurred. Typically, a request for mandamus will result in a higher court issuing a ruling to the lower court to act on the matter in dispute. That did not occur here. Instead, there was a procedural irregularity that confounded the Petitioner. Indeed, Mr. Ficher has never received written reasons for the denial of his initial state collateral challenge.

**B.    Mr. Ficher meets the burden of the actual innocence gateway.**

Actual innocence is established through demonstrating that, in the light of newly-discovered evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt". *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851 (1995); *see also McQuiggin*, 569 U.S. at 399. Indeed, it is in the "extraordinary case", in which a prisoner asserts a "credible showing of actual innocence", that he may overcome the time-bar, and have his claims considered on the merits. *McQuiggin*, 569 U.S. at 302-93 (*quoting Schlup*, 513 U.S. at 324); *see also House v. Bell*, 547 U.S. 518, 537, 126 S. Ct. 2064 (2006).

Mr. Ficher's filings were each pursued *pro se*—arguably, even his state appellate proceedings, wherein appellate counsel filed an *Anders* brief, to which Mr. Ficher attempted to supplement on his own.  Mr. Ficher seeks to have his conviction set aside based on his primary claim that he is actually innocent of second degree murder, the charge on which he was indicted and convicted.  He asserts that the witness, Ms. Kimmie Alexander, was available and willing to testify at trial, but that his trial counsel failed to call her as a defense witness. ROA.17.  Mr. Ficher's underlying argument is that his collateral claims (PCR or habeas), may not have been defaulted and he would not be precluded from having his innocence considered and adjudicated.   Mr. Ficher has maintained his

innocence since he was indicted in 1992. He has further maintained that he has had no effective representation, if any representation at all, since his ordeal in the criminal justice system began in 1992. Consequently, he argued for the application of equitable tolling, *Martinez* and actual innocence, to apply so that he could have his claims considered.

In its response to Mr. Ficher's 2014 habeas filing, the State argued that Mr. Ficher's claim of actual innocence was unsupported and that his complaints of Robert Young's inconsistent statements would not change the outcome of the jury's verdict. ROA.74. The State further argued Arland Burrell's testimony would have supported the conviction. The State argued that Young and Burrell's testimony countered any testimony Kimmie Alexander may have offered. The State argued that Mr. Ficher merely raises a swearing match of evidence that "lack[s] any indicia of reliability." ROA.74. The State then argued that Young's inconsistencies and Alexander's proposed testimony were both known at the time of trial, and so Mr. Ficher is not entitled to exemption from the time delays imposed by AEDPA.

It bears noting that all trials are swearing matches—such is the adversarial process. It is for the fact-finder to determine the credibility and weight of testimony, discerning fact from fiction. Collateral proceedings literally determine whether the lives of men and women who may have been wrongfully convicted,

should have their circumstances reviewed to correct the wrongs exacted.  *See McQuiggin v. Perkins*, *supra*.  Nevertheless, the State's argument that Mr. Ficher may not have been diligent in pursuing his claim, is nonsensical, as Mr. Ficher has demonstrated through his post-conviction applications and habeas filings, repeated and continual efforts to have his claims adjudicated.  Further, Mr. Ficher's claims do not fall within the ambit of unjustifiable delay.  The record plainly establishes that he continually attempted to bring his claims. Perhaps the worst miscarriage of justice is condemning an innocent man to punishment for a crime he did not commit.  Indeed,

> The Court has applied [the] "fundamental miscarriage of justice exception" to overcome various procedural defaults, including, as most relevant here, failure to observe state procedural rules, such as filing deadlines. See *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640. The exception, the Court's decisions bear out, survived AEDPA's passage. *See, e.g., Calderon v. Thompson*, 523 U.S. 538, 558, 118 S. Ct. 1489, 140 L. Ed. 2d 728; *House*, 547 U.S., at 537-538, 126 S. Ct. 2064, 165 L. Ed. 2d 1. These decisions "see[k] to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup*, 513 U.S., at 324, 115 S. Ct. 851, 130 L. Ed. 2d 808. Sensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations. Pp. 391-394, 185 L. Ed. 2d, at 1030-1031.

*McQuiggin v. Perkins*, 569 U.S. at 386.  Mr. Ficher's case presents just such a case where a miscarriage of justice has occurred.  Mr. Ficher's filings demonstrate that the ensuing delay in filings was justifiable.  Mr. Ficher did not sit on his rights but,

instead, repeatedly attempted to bring his claims to light in state and federal courts. *McQuiggin v. Perkins*, 569 U.S. at 399, 133 S.Ct. at 1936.

Mr. Ficher's claim of innocence is credible. He raised this claim in his first state post-conviction application and supplemented with the witness' affidavit. ROA.16-17. As discussed more fully below, the State's case against Mr. Ficher rested primarily in representations by Robert Young and Arland Burrell. Mr. Ficher made his trial counsel aware of Ms. Alexander and believed his trial counsel would subpoena her for trial. Unlike Robert Young or Arland Burrell, Ms. Alexander was an upstanding member of the community. She knew Mr. Ficher. Most importantly, she witnessed the shooting and the murder. ROA.17. She would have testified that Mr. Ficher was not the shooter and could have testified as to the description and other characteristics of the shooter and how they differed from Mr. Ficher. Young and Burrell's accounts were hardly credible. They had every reason to cooperate with the State and testify in their own interests. Ms. Alexander had none. Indeed, had Ms. Alexander testified, the State's case would have been undermined. Due to counsel's failure to call her at trial, the jury was prevented from considering this evidence. In looking at the entirety of the case against Mr. Ficher, if Ms. Alexander had been called as a witness, she would have been subject to cross-examination and would have provided clear and credible evidence in favor of Mr. Ficher. ROA.28. Her testimony would have created

reasonable doubt.  In light of her testimony and the evidence to be gained from her eyewitness account, no reasonable juror would have convicted Mr. Ficher.

## II.     Ineffective assistance of counsel.

Mr. Ficher suffered ineffective assistance of trial counsel by (a) counsel's failure to call Kimmie Alexander as a witness, and (b) counsel's handling of Robert Young's testimony.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel at all parts of the proceedings.  The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984), established a two-part test for evaluating claims of ineffective assistance of counsel. The *Strickland* Court held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  In deciding ineffective assistance of counsel claims, the reviewing court need not address both prongs of *Strickland*, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

For federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689). The Petitioner must demonstrate that counsel's strategy was unreasonable. *Strickland,* 466 U.S. at 689.

"The adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate. The right of effective assistance of counsel is, thus, the right of the accused to require the prosecution's case to survive the crucible of adversarial testing." *Jones v. Jones*, 988 F. Supp. 1000 (E.D.La. 12/19/97). In this matter, trial counsel failed to call Ms. Kimmie Alexander as a defense witness and failed to challenge the testimony of Robert Young. Ms. Alexander would have testified that, in fact, Mr. Ficher was not the individual who shot Kevien Smith to death. ROA.17. Ms. Alexander observed the incident occur. She was willing to appear at trial. Her testimony would have undermined Young and Burrell's purported accounts of the shooting. Smith was known to sell drugs. Burrell and Young were his associates. Young had his own criminal problems—issues of which the jury was never apprised. Because Ms. Alexander was never called as a witness, the State's case was not subjected to challenge, and the jury was left with questionable "evidence" that appeared as fact.

Factual issues are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators. . . .'" *Townsend v. Sain*, 372 U.S. 293, 309, 9 L.Ed. 2d 770, 83 S. Ct. 745 (1963) (*quoting Brown v. Allen*, 344 U.S. 443, 506, 97 L.Ed. 469, 73 S.Ct. 397 (1953)). It is these "factual issues" to which the statutory presumption of correctness predominantly relates. *Berryman v. Morton*, 100 F.3d 1089, 1094 (3rd Cir. 11/14/96) (*citing Thompson v. Keohane*, 516 U.S. 99, 109, 116 S. Ct. 457 (1995)). The United States Supreme Court has accorded the "jurist-observer" the judgment of such presumptive weight. *Berryman*, 100 F.3d at 1094 (internal citations omitted).  Trial counsel was hardly providing effective assistance where he deprived the factfinder from considering all the facts.  *See Jones*, 988 F. Supp. at 1004.  In failing to call Ms. Alexander as a witness, trial counsel precluded the jury from considering all the facts—preventing the fact finder from understanding and hearing directly from a witness who could confirm and be cross-examined on the fact that Mr. Ficher did not commit murder. Mr. Ficher had no involvement in the shooting.  However, through trial counsel's failure to call this key witness, leaving unchallenged Robert Young's testimony and specifically the fact that Young was facing additional charges in an unrelated criminal matter, the State's case was unconscionably left unrebutted and unreasonably untested.  Such a critical omission cannot be attributed to strategic decision-making at trial (certainly not by reasonable counsel).

Furthermore, Mr. Ficher avers that trial counsel was ineffective for failing to request a limiting instruction concerning Robert Young's prior inconsistent statements.  Trial counsel unreasonably left unchecked and unchallenged whether Young's testimony was the product of bias and prejudice.  Counsel did not test whether Young had any incentive to testify in favor of the State's case.  Influence was not raised before the jury, creating the false image that all facts were squarely before the jury to consider, when, in fact, not all the factors leading to this witness's reasons to testify were properly vetted.  *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110 (1974).  Reasonable jurists could have debated the credibility of Young and Burrell, especially in light of Ms. Alexander's testimony.  More likely than not, the outcome of the trial would have been affected in favor of Mr. Ficher.  Ms. Alexander would have been cross-examined on her observations and would have presented more credible than the State's alleged "eyewitnesses."  No reasonable juror would have convicted Mr. Ficher.  *McQuiggin v. Perkins*, 569 U.S. at 401.

## **CONCLUSION**

For the foregoing reasons, the appellant, Charles F. Ficher, Jr., respectfully requests that this Honorable Court reverse the district court's ruling denying habeas relief.

Respectfully submitted,

/s/  Nisha Sandhu
NISHA SANDHU
*Attorney of Record*
Nisha Sandhu, APLC
434 East Lockwood Street
Covington, Louisiana 70443
Tel.: (504) 920-7310
Fax: (504) 814-4513
*Attorney for Appellant,*
        *Charles F. Ficher, Jr.*

## CERTIFICATE OF SERVICE

I, NISHA SANDHU, certify that today, January 28, 2022, I electronically

filed the Brief for Appellant via CM/ECF, and that service by electronic delivery

was made upon ECF-registered counsel.

/s/  Nisha Sandhu
NISHA SANDHU

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(B), 5TH CIR. R. 32.2.7(c), undersigned counsel certifies that this brief complies with the type-volume limitations of 5TH CIR. R. 32.2.7(b).

1. Exclusive of the portions exempted by FED. R. APP. P. 32(f), 5TH CIR. R. 32.2.7(b)(3), this brief contains  6344   words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text produced by Microsoft Word for Mac, version 16.57.

/s/  Nisha Sandhu
NISHA SANDHU